**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 07-20816-CR-LENARD/TORRES

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

ROGER SHUTTS,

        Defendant.
_____/

**ORDER ON DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE
OR TO TRANSFER CASE PURSUANT TO RULE 21**

This matter is before the Court on Defendant's Motion to Dismiss for Improper Venue or to Transfer Case Pursuant to Rule 21 ("Defendant's Motion")[D.E. 38].[1]  Roger Shutts ("Defendant") contends that venue is improper because the Southern District of Florida has only an insignificant and arbitrary connection to the alleged crimes.  The United States of America ("Government") in response posits that venue is proper because Defendant committed and/or continued the criminal acts in the Southern District of Florida [D.E 43].  Defendant did not file a reply.

The pending Motion is ripe for disposition.  After carefully considering the arguments, as well as the court file, and for the reasons that follow, this Court hereby orders that Plaintiff's Motion be **DENIED**.

---

[1] This matter was referred to this Court by the Honorable Joan A. Lenard pursuant to 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules of the Southern District of Florida to take all necessary and proper action as required by law [D.E. 42].

## I.   INTRODUCTION

This case stems from a government sting operation targeting individuals who travel overseas with the intent of having sex with a minor.[2] Specifically, Defendant responded to an advertisement in an adult magazine by a company entitled Latin American Pleasure Tours, that specialized in "providing clean, fun-loving companion of varying ages for your pleasure vacation." [D.E. 38 at 2]. Unbeknownst to Defendant, the company was an undercover operation run by federal authorities.

Through a series of recorded telephone conversations between June 26, 2007 and July 16, 2007, law enforcement learned that Defendant requested the sexual services of a fourteen to fifteen year old female during his upcoming vacation to San Jose, Costa Rica. For this service, Defendant sent payment through the U.S. Postal Service in an Express Mail envelop to the company's post office box located in this District.[3] Once payment was received, law enforcement, still posing as agents from Latin American Pleasure Tours, spoke to Defendant to confirm receipt of payment.

On July 26, 2007, Defendant was to fly through Miami International Airport en route to Costa Rica.[4] Defendant boarded the first two legs of his flight, but during his

---

[2]   The record provides the bases for the following summary facts that are material to the issues presented in the analysis portion of this Order.

[3]   There is some discrepancy as to how much money Defendant sent. Government's Motion suggests Defendant paid with three separate money orders, two for $1,000 and one for $100. However, Agent Amanda C. Coder's probable cause affidavit notes that Defendant only paid $600. Regardless, it is uncontroverted in the record that Defendant sent *some* material amount of money through the U.S. Postal Service in an Express Mail envelope to the undercover company's post office box located in Ft. Lauderdale, Florida.

[4]   Defendant was scheduled to depart from the Rochester, New York airport on July 26, 2007 at 6:40 a.m. and arrive in the Dallas/Fort Worth Airport at approximately 8:55 a.m. Defendant was then supposed to leave Dallas/Fort Worth Airport at 11:20 a.m., and arrive at Miami Airport at 3:12 p.m. The flight to San Jose, Costa Rica was to depart from Miami Airport at 6:10 p.m. The record is unclear as to who

layover in Miami, he was apprehended by authorities. On his person was a confirmation letter that he was supposed to give the contact person in Costa Rica in order to obtain the minor. Defendant was arrested and given his *Miranda* warnings, and made several incriminating statements regarding his travel plans and of his desire to engage in sexual relations with a minor.

Prior to this incident, Mr. Shutts had never been to the Southern District of Florida. He lives and works in Rochester, New York. The advertisement he responded to was circulated in New York, and there was no Florida telephone number or address on the advertisement.

## II.   ANALYSIS

The issue here is whether venue appropriately lies in the Southern District of Florida for the two counts charged in the Indictment. Defendant was first indicted for violating 18 U.S.C. § 2422(b), a statute that makes it illegal to use the mail, or any facility of interstate or foreign commerce, to persuade, induce, entice, or coerce a minor to engage in sexual activity. Count 2 of the indictment then alleges that Defendant attempted to travel in interstate and foreign commerce for the purpose of engaging in illicit sexual conduct with a minor in violation of 18 U.S.C. § 2423(b) and (e).

### A.   *Venue is Proper in the Southern District of Florida*

A defendant has a constitutional and statutory right to be tried in the district where the crime was committed. *United States v. Cabrales*, 524 U.S. 1, 6, 118 S.Ct. 1772, 141 L. Ed. 2d 1 (1998); *United States v. Roberts*, 308 F.3d 1147, 1152 (11th Cir. 2002). The "*locus delicti* [of a crime] must be determined from the nature of the crime alleged and

---

actually booked Defendant's flight. This does not, however disturb our finding that venue is appropriate in this District.

the location of the act or acts constituting it." *United States v. Rodrigues-Moreno,* 526 U.S. 275, 279, 119 S.Ct. 1239, 143 L. Ed. 2d 388 (1999) (quoting *Cabrales,* 524 U.S. at 6-7).

Congress has provided a means for finding venue for crimes that occur in more than one district, as well as those crimes that qualify as "continuing offenses" and involve interstate commerce. In pertinent part, 18 U.S.C. § 3237(a) states:

> [A]ny offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.
>
> Any offense involving the use of the mails [or] transportation in interstate or foreign commerce ... is a continuing offense ... and may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.

Accordingly, to establish venue, the Government needs to show either (i) that Defendant's offense "was begun, continued, or completed" in this District, or (ii) that Defendant's offense involved "use of the mails" *or* transportation in interstate commerce, and that the mail matter or person traveling interstate went "through, or into" this District.[5]

We find that venue is proper in both instances because, on this record, Defendant purposefully delivered a money order through the U.S. Postal Service to a post office box in the Southern District of Florida to effectuate his criminal activity [D.E. 3 at 3]. By using the telephone to call law enforcement in this District, sending money through the U.S. mail to a post office box located in this District, then stopping in this District en route to Costa Rica, Defendant "continued" the crime in this District. Taken together, this

---

[5] Essentially, section 3237 is a catchall provision designed to prevent a crime which has been committed in transit from escaping punishment for lack of venue. *See United States v. McCulley,* 673 F.2d 346, 350 (11th Cir. 1982). Notably, there are no venue provisions in sections 2422 or 2423 that preclude application of venue statute section 3237. *See United States v. Breitweiser,* 357 F.3d 1249, 1253 (11th Cir. 2004).

activity is more than enough to establish venue under the first paragraph of 18 U.S.C. § 3237(a).

Second, the charged offense involved "use of the mails" and the mail matter went "through, or into" Ft. Lauderdale, Florida, making venue appropriate in this District. Defendant also transported himself "in interstate or foreign commerce;" thus, venue is proper in any district from, through, or into which he traveled, pursuant to the second paragraph of section 3237(a). *See, e.g., Breitweiser,* 357 F.3d at 1253 (crime committed on airplane may be prosecuted in city where plane lands).

Defendant contends that he did not commit any act within this District that constituted or furthered a crime, but instead was lured here by government agents operating a nationwide sting. In part, Defendant relied on *Cabrales*, 524 U.S. at 4, where the Supreme Court held that a defendant could not be tried in Missouri for money laundering offenses in Florida, where the laundered money came from drug deals committed in Missouri. *Id.* (finding venue improper in Missouri because defendant only acted in Florida). That case is readily distinguishable, because in *Cabrales* the defendant had no contact whatsoever with Missouri, whereas this Defendant did have material contacts with this District that are essential to the elements of the charged offenses. He may have formed the intent in New York, but Florida was where the mailing in interstate commerce was received that was essential for Defendant to carry out the offense. Florida's connections with the alleged scheme, therefore, are substantial and not merely incidental to the offense charged.

Defendant further suggests that even if we find venue proper, proceeding to trial in this District would be unconstitutional because the Government "manufactured venue." The concept of "manufactured venue" or "venue entrapment" stems from a footnote in *U.S. v. Meyers*, 692 F.2d 823, 847 n. 21 (2d Cir. 1982) where the court left

open the possibility of invalidating venue where the "key events occur in one district, but the prosecution, preferring trial elsewhere, lures a defendant to a distant district for some minor event simply to establish venue." *Id.* (citing *United States v. Archer,* 486 F.2d 670, 682 (2d Cir. 1973) (holding that government agents cannot manufacture federal *jurisdiction*)). *But see U.S. v. Rommy*, No. 06-0520-CR, 2007 WL 3243813, at *16 (2d Cir. 2007) ("In the quarter century since *Meyers*, this court has never vacated a conviction on the basis of manufactured venue.")

Defendant may have been entrapped to commit these alleged crimes, a defense he can certainly raise at trial. But the argument that venue in this District is thus improper is simply without merit. As the Fourth Circuit explained:

> It is also true that there are limits on the government's ability to "entrap" persons into crimes. Entrapment rules have no applicability to venue, however. The purpose of entrapment doctrine is to ensure that the government does not "implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission." Such substantive concerns of criminal law bear little relationship to a procedural concept such as venue.

*U.S. v. Al-Talib*, 55 F.3d 923, 929 (4th Cir. 1995) (internal citations omitted). Even if we could consider the illusory concept of manufactured jurisdiction, we would not have applied it in this case. *See U.S. v. Dabbs,* 134, F.3d 1071, 1079 n. 10 (11th Cir. 1998) ("The appellants fail to show that the government orchestrated the undercover operation in order to create venue.").

### B. *Transfer Pursuant to Rule 21*

Defendant requested the alternative relief of transfer pursuant to Fed. R. Crim. P. 21 and based on the Seventh Circuit's decision in *United States v. Rodriguez-Rodriguez*, 453 F.3d 458, 462 (7th Cir. 2006) (suggesting that Rule 21 is a procedural safeguard

against agents that try to manipulate venue).[6]  Rule 21(b) allows the Court to transfer the proceeding "to another district for the convenience of the parties and witnesses and in the interest of justice."

We decline to exercise our discretion to transfer this matter to another jurisdiction. The alleged crime was committed in this District every bit as much as New York. Defendant's alleged uncoerced decision to mail money to this District to pay for the sexual services of a minor, and his subsequent travel to this District, were not attempts by the federal prosecutor to obtain a strategic advantage. *See Rodriguez-Rodriguez*, 453 F.3d at 462.  They are, instead, material and incriminating contacts Defendant had in this District that furthered the allegedly unlawful activity.

Indeed, those contacts are more relevant to this prosecution because the applicable statute does not criminalize mere thought.  If that were the case, assuming the statute was constitutional in that event, then perhaps New York would be the most appropriate forum.  But it is the furtherance of that thought or intent through the use of the mail and interstate/foreign commerce that triggers the federal criminal violation.  Consequently, the strong connection between Defendant's unlawful *actions* and the State of Florida makes this District the most appropriate jurisdiction to adjudicate this case.

---

[6] Defendant does not specify the basis for transfer under Rule 21, but we assume he does so under subpart (b). Rule 21(a), on the other hand, provides that a transfer is appropriate "if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there."  There is nothing in Defendant's Motion, or the record as a whole, that supports the notion that Defendant would not obtain a fair trial in this District.

### III.    *CONCLUSION*

Based on the foregoing, it is hereby **ORDERED** that Defendant's Motion to Dismiss for Improper Venue or to Transfer Case Pursuant to Rule 21 [D.E. 38]is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 5th day of December, 2007.

                                                                EDWIN G. TORRES
                                                          United States Magistrate Judge

Copies provided to:
Honorable Joan A. Lenard
All counsel of record